Sarah L. Cave
Neil J. Oxford
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
cave@hugheshubbard.com
(212) 837-6559
oxford@hugheshubbard.com
(212) 837-6843

*Attorneys for Defendants City of New York
and Detective Raymond Brockmann*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLA BERNSHTEIN,<br><br>                              Plaintiff,<br><br>            -against-<br><br>CITY OF NEW YORK and DETECTIVE RAYMOND BROCKMANN,<br><br>                              Defendants. | Index No.:  08CV02906 |

**DEFENDANTS CITY OF NEW YORK AND DETECTIVE RAYMOND
BROCKMANN'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure Defendants, the City of New York and Detective Raymond Brockmann, respectfully submit this motion for judgment as a matter of law in favor of the Defendants on all claims.

<u>**PRELIMINARY STATEMENT**</u>

Defendants move for judgment as a matter of law because no reasonable jury could find in favor of Plaintiff based on the evidence she presented at trial.  Plaintiff failed to demonstrate

1

that the Defendants caused her pre-arraignment detention to be delayed unreasonably in such a way as to violate her constitutional right to a prompt judicial determination of probable cause.

As Judge Hellerstein held, the sole factual issue before this Court at trial is whether Plaintiff's detention was "delayed unreasonably." *Bernshtein v. City of New York*, No. 08 Civ. 2906, 2010 WL 2541617, at *1 (S.D.N.Y. June, 22, 2010), quoting *County of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991).  Underlying that factual question is the matter of intent -- "Was the pre-arraignment delay "motivated by ill will" toward Plaintiff?"  *Bernshtein*, 2010 WL 2541617, at *1.

Realizing that Detective Brockmann, and so the City of New York, cannot be held liable for any alleged delay at the hands of the Department of Corrections or the New York State Courts, Plaintiff sought to prove that her detention was "delayed unreasonably" by adducing evidence intended to support the argument that (1) Detective Brockmann could have and should have issued a desk appearance ticket ("DAT") to her; and therefore (2) his decision not to issue a DAT is evidence of his intent to delay her detention.  As the Court posed it, the question on this motion is "whether or not a trier of fact might reasonably infer [] that he influenced the decision to charge a felony rather than misdemeanor and thereby made the plaintiff ineligible for a desk appearance ticket," resulting in delay of her detention.  (1/11/11 Tr. 412:5-8.)

As a matter of both law and fact, that question must be answered in the negative. Plaintiff's arrest on a felony charge and prosecution have already been found to be constitutionally proper.  That conclusion is the law of the case and not subject to re-examination at this stage.  Further, as shown below, Plaintiff has not introduced a scrap of evidence that Detective Brockmann harbored any "ill will" toward her, or that his decision to charge her with a felony rather than a misdemeanor, which precluded the issuance of a desk appearance ticket,

2

evidenced any wrongful intent to delay her detention. From the evidence in the record, the only conclusion the jury could draw is that Detective Brockmann, the only individual defendant before this Court, acted reasonably throughout his dealings with Plaintiff and was not involved in any way with any supposed mistreatment once she was lodged in Manhattan Central Booking. Accordingly, no reasonable juror could find that Detective Brockmann is liable for Plaintiff's alleged damages.

In the absence of an underlying constitutional violation, the City of New York cannot be held liable. In any event, even if the jury were to find a constitutional violation by Detective Brockmann, the City of New York is not liable on the evidence presented because Plaintiff has not shown that her alleged injury was the result of any policy or custom of deliberately delaying detentions prior to arraignment.

## PROCEDURAL BACKGROUND

Plaintiff Alla Bernshtein brought this action pursuant to 42 U.S.C. § 1983 against Defendants the City of New York and Detective Raymond Brockmann, alleging that on June 16, 2006, she was falsely arrested and maliciously prosecuted by Defendants in violation of her constitutional rights. She asserted two claims under Section 1983, which she labeled as false arrest (First Cause of Action), and malicious prosecution (Second Cause of Action). She also included allegations relating to her detention prior to arraignment.

After argument on the parties' cross-motions for summary judgment, Judge Hellerstein granted Defendants' motion and dismissed the claims for false arrest and malicious prosecution, and, as to the City of New York, found that no municipal liability existed under the decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Bernshtein*, 2010 WL 254167, at *1. Judge Hellerstein determined that Plaintiff could proceed to trial on the allegations that her pre-arraignment detention violated her constitutional rights.

## **LEGAL STANDARD**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, judgment as a matter of law is warranted if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). In entertaining a motion for judgment as a matter of law, the Court may not "make credibility determinations or weigh the evidence" but it "should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 230 U.S. 133, 150 (2000) (citations omitted). Although the Court must draw reasonable inferences in favor of the nonmoving party, "the [C]ourt should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party." *Id.* at 151 (citations and internal quotations omitted); *see also Williams v. Cty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999); *TradeCard, Inc. v. S1 Corp.*, 509 F. Supp. 2d 304, 324 (S.D.N.Y. 2007).

## **ARGUMENT**

### I. NO REASONABLE JURY COULD CONCLUDE THAT DETECTIVE BROCKMANN INTENDED TO DELAY PLAINTIFF'S DETENTION AND THEREBY VIOLATED HER CONSTITUTIONAL RIGHTS.

The evidence that Plaintiff presented at trial is insufficient to find that Detective Brockmann violated Plaintiff's constitutional rights under 42 U.S.C. § 1983. To establish a claim against Detective Brockmann under Section 1983, Plaintiff must establish by a preponderance of the evidence that he was acting "under color of state law" at the time of the incident and that he caused Plaintiff to be deprived of a constitutional right. *See Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). Plaintiff also bears the burden of proving that Detective Brockmann's actions were a proximate cause of her injury. *Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002). While the first element of Plaintiff's claim is not in dispute, the record is

4

devoid of any evidence satisfying Plaintiff's burden of demonstrating that Detective Brockmann's actions violated her constitutional rights.

The propriety of Detective Brockmann's arrest and charge of Plaintiff with a Class D felony of criminal possession of a forged instrument under New York law was the precise issue that was before Judge Hellerstein on the Defendants' motion for summary judgment. On that motion, the Court determined that no genuine issue of material fact existed as to the propriety of Plaintiff's arrest, and that neither her arrest nor her prosecution gave rise to a constitutional violation. *Bernshtein*, 2010 WL 2541617, at *1 ("Defendants' motion for summary judgment is granted with respect to Plaintiff's claims for false arrest, malicious prosecution, and *Monell* liability.")

That Plaintiff's arrest and prosecution were constitutionally proper is law of the case, and not subject to re-examination at this stage. *N.Y. State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 395-96 (2d Cir. 1992) (law of the case doctrine "requires that we adhere to our own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to") (internal citations omitted); *Bey v. I.B.E.W. Local Union #3*, No. 05 Civ. 7910, 2009 WL 73113, at *1 (S.D.N.Y. Jan. 7, 2009). No such compelling reason exists here. Accordingly, Plaintiff cannot seek to re-argue the propriety of her arrest, nor can the re-characterization of her claim as one of excessive detention serve as a back-door to re-opening the evaluation of the constitutional validity of her arrest.

### A. Detective Brockmann Intended To, And Did, Process Plaintiff's Arrest Promptly.

Plaintiff introduced no evidence to prove that Detective Brockmann had any intent to delay her detention. To the contrary, the evidence in the record establishes that, far from intending to delay Plaintiff's detention, Detective Brockmann "tr[ied] his best to make it as fast

5

as possible." (1/11/11 Tr. 328:9-10.) Plaintiff herself admitted that Detective Brockmann "promised" she would "be out by 5:00. He said, you'll be out today." (1/11/11 Tr. 328:11-12.) To accomplish that, Detective Brockmann told her that he had "everything ready" for her, as well as for Theresa Okeh and Wellington da Silva, the two other individuals arrested for possession of fake badges that day, and that he would "transport[] the files right with" them. (1/11/11 Tr. 328:13-15.) Plaintiff testified that Detective Brockmann assured her he would "make it all as easy as possible." (1/11/11 Tr. 328:16-17.) Detective Brockmann did not undertake any extraneous or unnecessary procedures that might have extended the length of her detention. (1/11/11 Tr. 371:18-372:5.) All of this evidence negates any conceivable inference that Detective Brockmann intended to delay Plaintiff's detention. Indeed, Plaintiff called Detective Brockmann in her own case and did not even attempt to suggest that he had done anything other than make good on his promises.

Detective Brockmann's actions corroborate his expressed intent. The trial record shows that Detective Brockmann arrested Plaintiff, transported her to the Fifth Precinct, fingerprinted and photographed her, and transported her to Manhattan Central Booking, all within five or six hours. (1/11/11 Tr. 329:11-19, 371:8-10.) The Court of Appeals of New York has previously acknowledged that police functions incident to a warrantless arrest in New York City can generally take between eleven and fifteen hours. *See Roundtree*, 570 N.E. 2d at 224. Thus, the length of time during which Detective Brockmann fulfilled his police functions incident to Plaintiff's arrest was reasonable. Accordingly, the jury could not find that he intended to delay her detention at all, much less delay it to the extent that it would infringe her constitutional rights.

### B. Detective Brockmann's Decision Not To Issue A DAT To Plaintiff Was Discretionary And Therefore Does Not Amount To A Constitutional Violation.

For the reasons set forth above, this Court may not re-evaluate the legality of Detective Brockmann's discretionary decision not to issue a DAT to Plaintiff following her arrest for carrying a fake badge. Even if the Court were to re-analyze that decision with respect to the question of intent, however, Plaintiff cannot establish any constitutional claim because a refusal to issue a DAT following an arrest is not "objectively unreasonable." *Bryant v. City of New York*, 404 F.3d 128, 138 (2d Cir. 2005). As the Second Circuit, in a decision written by Judge Kearse, explained in the *Bryant* case:

> DATs are not required under New York law. The provision authorizing the issuance of a DAT states that when an officer is authorized to make a warrantless arrest (except with respect to certain categories of crimes not relevant here), "he *may* ... issue to and serve upon [the arrestee] an appearance ticket." N.Y.Crim. Proc. Law § 150.20(1) (emphasis added). The statute plainly does not make the issuance of a DAT mandatory."

*Id.* The court continued, "in light of the principles established by *Gerstein* and *McLaughlin,* the issuance of a DAT for the release of an arrestee immediately upon completion of the postarrest administrative procedures is not constitutionally required." *Id.*

Under *Bryant*, Detective Brockmann's decision not to issue a DAT to Plaintiff was constitutionally reasonable. Accordingly, the jury cannot conclude that Detective Brockmann unreasonably delayed Plaintiff's detention by virtue of that decision.

### C. The Decision To Charge Plaintiff With A Felony Rather Than A Misdemeanor Does Not Establish Detective Brockmann's Intent To "Unreasonably Delay" Her Detention.

Under the policies and procedures employed by the New York City Police Department, Plaintiff did not qualify for the issuance of a DAT because the charge on which she had been arrested was a Class D felony under New York law. (1/11/11 Tr. 403:11-18.) The Court has focused on the question whether, in effect, Detective Brockmann's involvement in the decision

7

to charge her with a felony instead of a misdemeanor somehow manifested an intent to "unreasonably delay" her detention.

To the contrary, the evidence that Plaintiff herself introduced demonstrates that Detective Brockmann had every reasonable expectation that Plaintiff, even when charged with a felony, would be released from Manhattan Central Booking within 24 hours of her arrest, either by the end of the day of her arrest or the next morning. Plaintiff admitted that Detective Brockmann told her not once but twice that he would "do his best" to get her released quickly. (1/11/11 Tr. 370:21-24.) Based on her conversations with Detective Brockmann, the Plaintiff believed that she would be released the next day, and instructed her mother to come to the courthouse to meet her there. (1/10/11 Tr. 184:4-8, 1/11/11 Tr. 218:3-5.) When Theresa Okeh, who was arrested at the same time as Plaintiff, was called for arraignment, Plaintiff anticipated that she would be next to be called to go to the courtroom. (1/11/11 Tr. 333:24-25.)

Furthermore, the testimony of the other three witnesses arrested at 26 Federal Plaza for possessing fake badges substantiates Detective Brockmann's understanding that such arrests were typically followed by arraignment within 24 hours. The evidence shows that Theresa Okeh was arraigned within approximately 11 hours, (1/11/11 Tr. 279:3-25), Lazjer Grynsztajn was arraigned within approximately 14 hours, (1/11/11 Tr. 231:1-5), and Yevgeniy Dikler was arraigned within approximately 23 hours. (1/11/11 Tr. 242:1-243:5.) Assuming, as Plaintiff contends, that these individuals comprise a representative sample of the arrest-to-arraignment time for people arrested at 26 Federal Plaza for possession of a fake badge, this sample provides an average detention of 16 hours, one-third less than 24 hours.

Accordingly, the only reasonable conclusion from the evidence in the record is that Detective Brockmann believed that, even though he had charged Plaintiff with a felony, it would

8

not result in a detention of any longer than approximately 24 hours. In her questioning of Detective Brockmann, Plaintiff did not even attempt to demonstrate otherwise.

### D. None Of The Other Evidence That Plaintiff Introduced Demonstrates Any Intent By Detective Brockmann To "Unreasonably Delay" Her Detention.

Even if the evidence could be read to suggest that <u>someone</u> intended to delay Plaintiff's arraignment, no witness or other evidence in the record attributed that intention to Detective Brockmann.

First, Plaintiff has admitted that Detective Brockmann was not among the people at Manhattan Central Booking who allegedly ridiculed, harassed or ignored her. (1/11/11 Tr. 337:8-338:4, 374:20-375:5, 375:17-376:5.) Further, she acknowledged that she did not name any of those other individuals as defendants in this case. (1/11/11 Tr. 360:13-16.)

Second, Plaintiff admitted that the last time she saw Detective Brockmann was at around 5 or 6 p.m. on Friday June 16, 2006, and that all of the alleged mistreatment at Manhattan Central Booking occurred at the hands of other individuals after Detective Brockmann left. (1/11/11 Tr. 329:11-19, 371:8-10.)

In short, no reasonable juror could conclude from the evidence regarding Plaintiff's alleged mistreatment by individuals at Manhattan Central Booking that <u>Detective Brockmann</u> had intentionally delayed her detention or otherwise caused the mistreatment she purports to have suffered.

## II. THE CITY OF NEW YORK IS NOT LIABLE TO PLAINTIFF BECAUSE THERE IS NO EVIDENCE TO ESTABLISH MUNICIPAL LIABILITY.

Judgment as a matter of law in favor of the City of New York is warranted because Plaintiff has failed to establish a constitutional violation attributable to the City of New York. In order to hold the City of New York liable under Section 1983, Plaintiff must show "that the municipality *itself* cause[d] the constitutional violation at issue." *City of Canton v. Harris*, 489

9

U.S. 378, 385 (1989) (emphasis in original). To satisfy this burden, Plaintiff must demonstrate both a constitutional violation and a sufficient causal relationship between the violation and a municipal policy or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Bautista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). Plaintiff has done neither.

Because Plaintiff did not suffer any constitutional injury, as demonstrated in Part I, *supra*, the Court need not reach the *Monell* claim because "[t]here can be no constitutional violation for which the City could have been liable." *Fernandez v. City of New York*, 02 CV 8195 (JGK), 2003 U.S. Dist. LEXIS 13122, at *26 (S.D.N.Y. July 29, 2003).

Plaintiff has also failed to show the existence of a policy or practice that violated her constitutional rights as required to establish municipal liability. A policy or practice can be proved in several ways including (1) showing the existence of a formal policy officially adopted or promulgated by the municipality (*Monell*, 436 U.S. at 690) or (2) establishing that the acts of a municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising police-maker must have been aware (*Bd. of Cty. Comm'rs v. Brown*, 420 U.S. 397, 404 (1997)). Nevertheless, "a single incident . . . especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (citations and internal quotations omitted). There has been no evidence at trial that could support a finding of municipal liability, as Plaintiff has not introduced any evidence to prove the existence of a policy or custom. Even if the evidence could somehow show a policy, Plaintiff has failed to demonstrate a direct causal link between the municipal policy or custom and the alleged deprivations. There are no facts in the record to support a finding that the City of New York is

liable under Section 1983 and the court should therefore grant the motion for judgment as a matter of law entering a verdict of not liable.

## CONCLUSION

Plaintiff has failed to present evidence to support a finding that her constitutional rights were violated by Defendants Detective Brockmann and the City of New York.  Defendants respectfully request the Court grant the motion for judgment on the law that Defendants are not liable to Plaintiff, and granting any other or further relief as the Court may deem just and proper.

Respectfully Submitted,

HUGHES HUBBARD & REED LLP

By: /s/
    Sarah L. Cave
    Neil J. Oxford

One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6559
(212) 837-6843
cave@hugheshubbard.com
oxford@hugheshubbard.com

*Attorneys for Defendants City of New York and Detective Raymond Brockmann*